**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Mara Finch,

                Plaintiff,

v.

Block Incorporated, *et al.*,

                Defendants.

No. CV-25-04247-PHX-JJT

**ORDER**

Before the Court are *pro se* Mara Finch's Motion to Remand This Case to Maricopa County Superior Court ("Motion to Remand") (Doc. 11), Defendant Block Incorporated's Motion to Dismiss (Doc. 28), Defendant McDonald's USA, LLC Motion to Dismiss (Doc. 35), Plaintiff's Motion to Stay (Doc. 33), Plaintiff's Motion to Strike Defendant McDonalds [sic] Good Faith Certificate ("Motion to Strike") (Doc. 39), and Defendant McDonald's Motion for Extension of Time to File Its Reply In Support of Its Motion to Dismiss ("Motion for Extension") (Doc. 53). These motions are fully briefed and neither party requested oral arguments to address them. *See* LRCiv 7.2(f). For the reasons set forth below, the Court will grant in part and deny in part Defendants' Motions to Dismiss, grant Defendant McDonald's Motion for Extension, and deny all other motions.

. . .

. . .

. . .

1    **I.    BACKGROUND[1]**

2        This action arises from an unauthorized transaction from Plaintiff's bank account

3    by Defendant McDonald's that was facilitated through Defendant Block's platform "Cash

4    App." (Compl. at 3.[2]) Plaintiff attempted to place an order at a McDonald's drive-through

5    for drinks. (*Id.* at 11.) After delay from the workers "toying around," Plaintiff told the

6    workers to "[f]orget it" and Plaintiff drove away. (*Id.*) Moments later, Plaintiff received a

7    charge alert of $77.01 from McDonald's. (*Id.*) Plaintiff returned to the store to address the

8    charge with the workers to no avail. (*Id.*) Plaintiff subsequently filed a claim disputing the

9    transaction with Defendant Block, which it later denied. (*Id.*) Plaintiff also spoke with a

10    regional manager of McDonald's who advised that the transaction was a store error and

11    offered Plaintiff an in-store refund. Plaintiff declined the refund because she was no longer

12    physically located near that particular store. (*Id.* at 11–12.) The regional manager advised

13    Plaintiff to contact her bank to dispute the charge and provide her bank with his direct

14    contact information so he could verify the transaction error with a bank representative. (*Id.*

15    at 12.)

16        Subsequently, Plaintiff "reached out to Cash App . . . regarding the transaction and

17    explained what happened," but Defendant Block did not respond. (*Id.*) Plaintiff "filed a

18    complaint with the BBB and the consumer/State of California finance inspector." (*Id.*)

19    Thereafter, Defendant McDonald's "literally would not respond," and Defendant Block

20    "continued to deny the charge was unauthorized." (*Id.*) Plaintiff was "immediately

21    triggered with anxiety, panic attacks, and distress," and "was made a fool and essentially

22    called a liar." (*Id.*) The unauthorized transaction deprived Plaintiff of the money she

23    required to obtain her medical prescription, and she suffered a panic attack and mild seizure

24    as a result. (*Id.* at 11–12.)

25    _____

26    [1] The following facts are uncontested or—to the extent they are contested—are drawn from
      Plaintiff's Complaint (Doc. 1-2, Compl.) and are taken as true and construed in the light
27    most favorable to Plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).
      [2] Plaintiff's Complaint is a mix of numbered paragraphs, unnumbered paragraphs, and long
28    strings of narration that switch between the factual allegations, claims, and demands for
      relief. For clarity and consistency, the Court cites the page number of the Complaint
      generated by the CM/ECF system located in the top header of the document.

Plaintiff filed a complaint in the Maricopa County Superior Court asserting eight claims: (1) violation of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, against Defendant Block; (2) breach of contract against both Defendants; (3) fraud and misrepresentation against both Defendants; (4) violation of the Arizona Consumer Fraud Act ("ACFA"), A.R.S. § 44-1522, against both Defendants; (5) defamation per se against both Defendants; (6) negligence and gross negligence against both Defendants; (7) unjust enrichment against Defendant McDonald's; and (8) violation of A.R.S. § 13-2311 against both Defendants. (Compl. at 6–7.)

Defendant Block timely removed the action. (Doc. 1). Four days after removal, Plaintiff moved to remand the matter back to the state court (Doc. 11), to which Defendant Block responded (Doc. 47), Plaintiff replied (Doc. 56), and Defendant McDonald's filed nothing. Meanwhile, Defendants each moved to dismiss Plaintiff's claims (Docs. 28, 35). Plaintiff responded to each motion (Docs. 32, 38) and separately moved to stay further briefing until her Motion to Remand was ruled upon (Docs. 33, 57), which only Defendant Block opposed (Doc. 50). Defendant Block timely replied in support of its Motion to Dismiss (Doc. 44), while Defendant McDonald's filed its reply three days late (*see* Doc. 48). Defendant McDonald's has since moved for—and Plaintiff opposes—an extension of time to file the late reply (Docs. 53, 55, 59). Subsequently, Plaintiff filed a document titled "Response to Defendants' Joint Motion to Dismiss" (Doc. 58) after already filing her responsive memoranda.

Against that backdrop, the Court will first consider Plaintiff's Motion to Remand to determine whether it possesses removal jurisdiction before ruling on the other pending motions. Then, the Court will consider Plaintiff's Motion to Strike, Defendant McDonald's Motion for Extension, and Plaintiff's Sur-reply to cull, if necessary, the briefing before the Court relevant to the Motions to Dismiss. Then, the Court will turn to the Motions to Dismiss and all other remaining motions.

. . .

. . .

1    **II.    MOTION TO REMAND**

2        **A.    Legal Standard**

3        Federal courts may exercise removal jurisdiction over a case only if subject-matter

4   jurisdiction exists. 28 U.S.C. § 1441(a); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116

5   (9th Cir. 2004). The removing party is required to provide a signed notice of removal that

6   contains a short and plain statement of the grounds for removal. 28 U.S.C. § 1446(a). The

7   removing party carries the burden of establishing subject-matter jurisdiction, and doubts

8   about federal jurisdiction should be resolved in favor of remand to state court. *Gaus v.*

9   *Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see* 28 U.S.C. § 1447(c). A plaintiff may

10  seek to have a case remanded to the state court from which it was removed if the federal

11  court lacks jurisdiction or if there is a defect in the removal procedure. 28 U.S.C. § 1447(c).

12  The federal court must remand the case if it appears before final judgment that the court

13  lacks subject-matter jurisdiction. *Id.* Federal courts only have subject-matter jurisdiction

14  over cases that involve either a controversy between citizens of different states ("diversity

15  jurisdiction") or a question of federal law ("federal question jurisdiction"). *See* 28 U.S.C.

16  §§ 1331, 1332.

17        **B.    Analysis**

18        Plaintiff asserts a federal EFTA claim against Defendant Block. (Compl. at 2, 4, 6.)

19  Defendant Block contends that removal is appropriate because the Court has federal

20  question jurisdiction over Plaintiff's EFTA claim and supplemental jurisdiction over the

21  state law claims arising from the same case or controversy. (Doc. 47 at 4.) In support of

22  remand, Plaintiff first argues that she amended her complaint in state court to exclude her

23  EFTA claim, so the Court lacks federal question jurisdiction. (Doc. 11 at 5; Doc. 13 at 6;

24  Doc. 18 at 4.) However, Plaintiff amended her state court pleading one day after Defendant

25  Block removed the matter to this Court. Pleadings filed in a state court after removal to a

26  federal court have no bearing on the latter. As far as the operative Complaint reflects,

27  Plaintiff still alleges a federal cause of action. *See Walker v. Arizona*, 158 F.4th 971, 980–

28

81 (9th Cir. 2025) (holding that a federal court's jurisdiction depends on the operative pleading).

Second, Plaintiff argues that the Court should remand this matter because removal was "procedurally defective." (Doc. 11 at 5.) That defect, according to Plaintiff, is that Defendants' counsel had not filed a notice of appearance in the state court prior to removal. (*Id*.) But counsel is not required to file a separate notice of appearance with the state court before filing a notice of removal. *Kane v. Bosco*, No. 10-cv-01787-PHX-JAT, 2010 U.S. Dist. LEXIS 128746, at *14 (D. Ariz. Nov. 23, 2010). Further, in this District, "[t]he filing of an initial pleading or motion counts as an appearance such that no separate notice is required." *Id*. (holding that a notice of removal constitutes a notice of appearance under LRCiv 83.3) (citing *Mason v. Utley*, 259 F.2d 484, 485 (9th Cir. 1958)). Accordingly, Defendants' counsel's failure to file a notice of appearance in the state court prior to removal is not a procedural defect warranting remand.

Third, Plaintiff argues that she is prejudiced by removal because she was confused and misled about the status of her case when Defendants removed it. (Doc. 11 at 5.) But the docket reflects that Plaintiff filed six filings in this matter only four days after removal (*see, e.g.*, Docs. 9–14), which indicates that she understood this Court was the proper venue for her various filings. Plaintiff's frequent filings and engagement in motion practice in this matter demonstrate that Plaintiff is neither confused, misled, nor disadvantaged by proceeding in federal court.

Fourth, Plaintiff argues for the first time in reply that removal was defective because Defendant McDonald's did not consent to removal and did not join Defendant Block's response to Plaintiff's Motion to Remand. (Doc. 56 at 2–3.) There is no requirement that Defendant McDonald's must provide "written consent" to removal as Plaintiff suggests. Rather, 28 U.S.C. § 1446(b)(2) requires only that all served defendants "must join in or consent to the removal of the action." In the Ninth Circuit, "the filing of a notice of removal can be effective without individual consent documents on behalf of each defendant." When, as here, a defendant files a "timely removal notice containing an averment of the

other defendants' consent and signed by an attorney of record," removal is procedurally sufficient. *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009). (*See* Doc. 1 at 3 (Defendant Block averring Defendant McDonald's consent to removal).) Moreover, Defendant McDonald's failure to file or join in Defendant Block's responsive memorandum opposing remand does not render the removal procedurally defective. Rather, the Court construes Defendant McDonald's silence as its consent to the granting of Plaintiff's Motion to Remand pursuant to LRCiv 7.2(i).

Fifth, Plaintiff argues for the first time in reply that the Court should decline to exercise its jurisdiction over the EFTA claim because the instant action "is primarily a state-law consumer, negligence, and defamation case," "[f]ederal courts decline supplemental jurisdiction where federal claims are minor or overshadowed by state issues," and cites to 28 U.S.C. § 1367(c). (Doc. 56 at 4.) District courts generally have supplemental jurisdiction over claims forming "part of the same case or controversy" as the claim that gives rise to the court's original jurisdiction. *See* 28 U.S.C. § 1367(a); *Walker*, 158 F.4th at 980. "A state law claim is part of the same case or controversy when it shares a common nucleus of operative fact with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (citation modified). Exercising supplemental jurisdiction is within a district court's discretion. *Id*. Section 1367(c) sets forth four subcategories of claims over which a district court may decline supplemental jurisdiction:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

As relevant here, Plaintiff argues that the second subcategory applies. "State law claims may substantially predominate over federal claims within the meaning of § 1367 in terms of proof of the scope of the issues raised, or of the comprehensiveness of the remedy

sought." *Plouviez v. Duel*, No. 2:21-cv-08934-FWS-JC, 2022 U.S. Dist. LEXIS 212726, at *36 (C.D. Cal. Nov. 23, 2022). But the underlying conduct of the federal claim—that Defendant Block issued an unauthorized payment from Plaintiff's bank to Defendant McDonald's through Cash App—shares a common nucleus of operative facts underlying each state law claim. (*See* Compl. at 3) Plaintiff herself characterizes this matter as one that turns on "McDonald's erroneous charge" (Doc. 56 at 4), and the Court agrees that the "erroneous charge" precipitates the entire controversy before the Court. The Court observes that the proof necessary to show that the transaction was unauthorized and whether Defendant Block failed to uphold its responsibilities under the EFTA would also prove various elements of the state law claims. Accordingly, the Court will exercise supplemental jurisdiction over those state law claims because none of the § 1367(c) subcategories are satisfied.

In sum, the removal of this matter was procedurally sound and based on proper federal question jurisdiction arising from the EFTA claim. The Court's supplemental jurisdiction over the state law claims is also appropriate because they share the same nucleus of operative facts as those underlying the EFTA claim. Accordingly, the Court will deny Plaintiff's Motion to Remand. Plaintiff's Motion to Stay, which requests the Court stay "briefing, consideration, and ruling on [the Motions to Dismiss] until the Court resolves the threshold issue of subject-matter jurisdiction" (Doc. 33 at 4), is now moot and will be denied.

## III. MOTION TO STRIKE

After Defendant McDonald's filed its Motion to Dismiss, Plaintiff moved to strike the good faith certificate attached thereto on the basis that it "was conducted in a tone that was combative, aggressive, dismissive, and highly unprofessional." (Doc. 39 at 4.) Defendant McDonald's responds that Plaintiff's motion is unauthorized by the local rules of this Court or, alternatively, the certificate relayed the conferral accurately and complied with the local rules (Doc. 49 at 4–5.) While Defendant McDonald's points are well taken,

the Court takes this opportunity to clarify the purpose of meet-and-confers and set the parties' expectations about their interactions moving forward.

The purpose of the meet-and-confer at the motion to dismiss stage is as follows: when a party believes another party's pleadings are insufficient under the applicable rules or law, the meet-and-confer is required to give the objecting party the opportunity to raise with the other party that disagreement and for the other party, upon hearing the concern, to in good faith evaluate the concern to determine whether it has merit. If the other party agrees the first party's concern has merit, the other party can correct course. If the other party does not agree, then the objecting party may file its motion and the Court must engage. That is all. The meet-and-confer is not a forum for arguing the merits of the case, nor is it the place to raise things that have happened in other facets of the litigation. It is simply a way to isolate a perceived misstep in the pleadings and discuss that limited question—and nothing else—to determine if the parties can resolve the limited issue by mutual assent without involving the Court. These same principles can be applied with equal force to meet-and-confers that happen later in the litigation process, like during discovery disputes.

With that principle in mind, the Court observes that Defendant McDonald's requested a call with Plaintiff to discuss its intent to file a motion to dismiss. (Doc. 39 at 8.) Upon Plaintiff indicating her preference for email, Defendant McDonald's then informed Plaintiff in writing of its belief that her pleading is barred under the two-dismissal rule and could not be cured by amendment, and asked Plaintiff to voluntarily dismiss her pleading. (Doc. 39 at 9.) Defendant McDonald's used a tone that was firm but not unprofessional, combative, aggressive or dismissive as Plaintiff portrayed it to be. And while Plaintiff may have medical and mental health conditions that are aggravated by stress, the meet-and-confer process presents no greater stress than what is already inherent in the adversarial nature of the litigation process. Further, the Court will not require either Defendants' counsel to act or litigate under a higher standard than what is already demanded of them by the governing rules and regulations of legal ethics and

professionalism. Defendant McDonald's met the requirements and spirit of the meet-and-confer, so the Court will deny Plaintiff's Motion to Strike.

## IV.    MOTION FOR EXTENSION

### A.    Legal Standard

Federal Rule of Civil Procedure 6(b) permits a court to extend time for filing "after the time has expired if the party failed to act because of excusable neglect." Federal courts employ the four-factor established in *Pioneer Investment Services v. Brunswick Associates Limited Partnership* to determine whether circumstances constitute excusable neglect. 507 U.S. 380, 395 (1993). Those factors are: (1) the danger of prejudice to the other party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Iopa v. Saltchuk-Young Bros., Ltd.*, 916 F.3d 1298, 1301 (9th Cir. 2019). "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs.*, 507 U.S. at 392.

### B.    Analysis

Defendant McDonald's moves to extend the time to file its Reply in support of its Motion to Dismiss, which it filed three days late. According to Defendant McDonald's, it "inadvertently applied Arizona state practice . . . instead of correctly applying Federal Rule of Civil Procedure 6(a)" while calendaring the filing deadline. (Doc. 53 at 4.) Defendant McDonald's argues—and Plaintiff contests—that this error constitutes excusable neglect under Rule 6(b)(1)(B).

The third *Pioneer* factor weighs against finding excusable neglect. "[A] lawyer's failure to read an applicable rule is one of the least compelling excuses that can be offered," which is precisely what happened here. *Pincay v. Andrews*, 389 F.3d 853, 859 (9th Cir. 2004). Defendant McDonald's even recognizes that its inadvertence in applying Arizona

state practice to calendaring its deadlines "was within counsel's control" (Doc. 53 at 4), which cuts against a finding that the neglect was justified.

The first, second, and fourth *Pioneer* factors, however, weigh in favor of finding excusable neglect. Defendant McDonald's argues, and the Court agrees, that Plaintiff had a full and fair opportunity to present her arguments in a responsive memorandum by the time the belated reply memorandum was filed. While Plaintiff argues that she is prejudiced because "[f]urther delay prolongs the resolution of pending issues . . . and increases the burden on Plaintiff" (Doc. 55 at 2), the parties' briefing related to the Motion for Extension was completed within one week of all other concurrent motion practice. There was minimal delay. There is also no indication in the Motion for Extension or the record that Defendant McDonald's seeks a strategic advantage or deals in gamesmanship by filing the Reply late. In fact, Defendant McDonald's filed its Motion for Extension within four days of filing its Reply, indicating that it sought to correct its filing mistake quickly. This also appears to be an isolated incident, as the Court is aware of no other time when Defendant McDonald's was late in filing a reply brief. The Court notes that Plaintiff makes no specific argument that Defendant McDonald's acted in bad faith to request an extension. (*See* Doc. 55.)

On balance, three of the four *Pioneer* factors weigh in favor of finding excusable neglect. The Court therefore grants Defendant McDonald's Motion for Extension.

## V.    PLAINTIFF'S SUR-REPLY

Plaintiff has, once again, filed a sur-reply. While Plaintiff titles the document as a "Response to Defendants' Joint Motion to Dismiss" (Doc. 58 at 1), it nonetheless attacks each of Defendant McDonald's arguments for dismissal and largely mirrors that which already Plaintiff advanced in her responsive memorandum. (*Compare* Doc. 38 *with* Doc. 58.) This marks the **_fourth time_** that Plaintiff has violated the Court's directives despite the Court's numerous attempts to detail its expectations of Plaintiff, motion practice procedures, and court rules. (*See* Docs. 43 (first order), 46 (second order), 51 (third order).) Within three days of the Court's third admonishment of Plaintiff for filing an improper sur-reply, she filed the instant Sur-Reply. Plaintiff then contacted a case administration

specialist of the District Court of Arizona to change the docketing information of the document from "sur-reply" to "response." In other words, she understood that her Sur-Reply was, in fact, an improper sur-reply or, at a minimum, that the Court would construe it as a sur-reply in violation of its recent order. Plaintiff's various attempts to mischaracterize the filing are a disingenuous attempt to evade motion practice procedure, gain the strategic advantage of "having the last word," and circumvent the Court's multiple orders prohibiting her from this exact misconduct.

Accordingly, Plaintiff's Sur-Reply will be stricken from the record and the Court will consider no part of it. At this time, the Court declines to issue additional sanctions. However, the Court will strictly enforce its rules, orders, and expectations against Plaintiff going forward and will issue sanctions for any future noncompliance, including monetary sanctions and the dismissal of claims.

## VI.    MOTIONS TO DISMISS

Having determined the Court has proper jurisdiction and identified which memoranda will be considered, the Court now turns to evaluate the Defendants' Motions to Dismiss. Defendants argue that dismissal is warranted for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Defendants' sole argument for dismissal under Rule 12(b)(1) is that Plaintiff's Complaint is barred under the "two-dismissal rule." As discussed in greater depth *infra*, the two-dismissal rule is an outgrowth of the claim preclusion doctrine. *Olewin v. Nobel Mfg., LLC*, 523 P.3d 413, 420 (Ariz. Ct. App. 2023). But claim preclusion "is not a jurisdictional matter." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005). As Defendants later acknowledge in reply (Doc. 44 at 2–3; Doc. 48 at 5), the proper vehicle through which a claim preclusion defense is raised is Rule 12(b)(6). Accordingly, the Court will assess Defendant's Motions to Dismiss under Rule 12(b)(6). *See, e.g.*, *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 n.2 (9th Cir. 1995).

. . .

. . .

### A.    Legal Standard

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). This rule equally applies to counterclaims. A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

"Generally, a court may not consider material beyond the complaint in ruling on a Fed. R. Civ. P. 12(b)(6) motion. However, a court may take judicial notice of matters of

public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute." *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

### B.   Analysis

#### 1.   *Two-Dismissal Rule*

Generally, a voluntary dismissal by a plaintiff has the effect of dismissing the action without prejudice. Fed. R. Civ. P. 41(a)(1)(B). The two-dismissal rule, however, creates an exception and treats a plaintiff's second voluntary dismissal of the same claim as an adjudication on the merits. *Rose Court, LLC*, 119 F.4th at 685. "The Rule does not require an inquiry into the circumstances of the two dismissals." *Lake at Las Vegas Inv'rs Grp. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 727 (9th Cir. 1991). But when, as here, the two earlier dismissals occur in a state court, the two-dismissal rule only applies if the state in which the dismissal occurred recognizes its own two-dismissal rule. *See TCW Special Credits v. Fishing Vessel Chloe Z*, No. 99-15136, 2000 U.S. App. LEXIS 23213, at \*3–4 (9th Cir. Sep. 8, 2000); *Ferretti v. Beach Club Maui, Inc.*, No. 18-00012 JMS-RLP, 2018 U.S. Dist. LEXIS 103950, at \*6 (D. Haw. June 21, 2018) ("Because the second dismissal in this matter occurred in state court, the court must determine whether [the state's] two-dismissal rule applies.").

Arizona has adopted the two-dismissal rule. Under the Arizona Rule of Civil Procedure 41(a)(1)(B), and in near replication of its federal rule counterpart, "if the plaintiff previously dismissed an action in any court based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." Application of the two-dismissal rule "may enable a defendant to assert that a plaintiff's attempt at a third action is barred due to claim preclusion." *Olewin*, 523 P.3d at 420. However, the two-dismissal rule alone does not justify dismissal of claims, it merely satisfies one of the three elements of claim preclusion. *Id.*

Both Defendants argue that the present action is barred under the two-dismissal rule because it is the third action filed by Plaintiff, and she previously dismissed two similar

actions in state court.[3] (Doc. 28 at 4–6; Doc. 35 at 4.) Defendant Block attaches to its Motion to Dismiss the filings filed by Plaintiff in Maricopa County Superior Court. (Docs. 28-1–28-6.) Both Defendants request—and Plaintiff does not oppose—that the Court take judicial notice of these state court filings. (Doc. 28 at 4; Doc. 35 at 3.) Further, Plaintiff does not dispute that the state court filings are accurate and that she filed them. The Court finds it appropriate to take judicial notice of the state court filings to determine whether claim preclusion bars Plaintiff's instant action. *Intri-Plex Techs., Inc.*, 499 F.3d at 1052.

Those state court filings reveal that Plaintiff filed three civil complaints in state court, each of which asserted the same causes of action and facts against both Defendants: (1) cause number CV-2025-036239 ("*Finch I*") on October 6, 2025 (Doc. 28-1); (2) cause number CV2025-036616 ("*Finch II*") on October 8, 2025 (Doc. 28-4); and (3) cause number CV2025-036820 ("*Finch III*") on October 9, 2025 (Compl.). The only difference between these state court filings was how Plaintiff referred to Defendants in the caption. On October 11, 2025, Plaintiff moved to dismiss *Finch I* and *Finch II* because of "errors made in the case." (Docs. 28-2 at 2; Doc. 28-5 at 2.) The state courts dismissed without prejudice *Finch I* on October 14, 2025 (Doc. 28-3) and *Finch II* on November 5, 2025 (Doc. 28-6). *Finch III* remained and was eventually removed by Defendants to this Court.

While Arizona's two-dismissal rule seems applicable here in a technical sense, the Court declines to apply it. The rule is, at its heart, intended to prevent abusive and harassing litigation tactics.[4] *Rose Court, LLC*, 119 F.4th at 685 ("[The rule] limits a plaintiff's right to repeatedly dismiss the same claims to the detriment of the defendant and the court's docket."). After all, claim preclusion—of which the two-dismissal rule is a small

---

[3] In arguing that this action is barred under the two-dismissal rule, Defendant McDonald's quotes nonexistent language from *Lake at Las Vegas Investors Group, Incorporated*, 933 F.2d 724. (*See* Doc. 48 at 3.) This appears to be an isolated incident and Defendant McDonald's otherwise fairly quotes and represents all other cases it cites. Still, the Court must draw attention to this error and issue a clear warning to counsel for Defendant McDonald's to avoid misquoting cases in the future.

[4] After reviewing Arizona case law and other state authority regarding the two-dismissal rule, the Court could not locate any pronouncement or clarification of the state policy underlying it. *See, e.g.*, State Bar Committee Notes to Ariz. R. Civ. P. 41 (omitting discussion regarding subpart (a)(1)(B)). Arizona's two-dismissal rule, however, mimics its federal counterpart. Therefore, the Court observes the Ninth Circuit's explanations of the policy underlying the two-dismissal rule.

component—"protects litigants from the burden of relitigating . . . and promotes judicial economy by preventing needless litigation." *Hall v. Lalli*, 977 P.2d 776, 779 (Ariz. 1999). Notably, the claim preclusion doctrine "is not rigidly applied when it would contravene an overriding public policy or result in manifest injustice." *Gibbs v. Gibbs*, 258 P.3d 221, 225 (Ariz. Ct. App. 2011) (citation modified).

Here, in a clear misconception of the procedural rules not uncommon among *pro se* litigants, Plaintiff filed three state court actions in prompt succession and each time changed only what she believed to be the "legal name" of the Defendants in the caption. These state court filings are tantamount to an amendment of her pleadings. Even though these amendments could have been accomplished as a matter of course or by motion under the state civil procedural rules, such filings do not amount to a vexatious litigation scheme designed to abuse or harass Defendants, especially when Defendants were completely unaware of those state actions until after Plaintiff dismissed them. Despite not having any notice of or need to litigate *Finch I* and *II*, Defendants now seek to avail themselves of the claim preclusion defense. But the principles of the two-dismissal rule and claim preclusion ought not apply here as it would contravene the spirit of those principles and result in a manifest injustice by denying Plaintiff access to the judicial system on nothing more than a technicality stemming from a *pro se* litigant's unfamiliarity with procedure.

### 2.    *Count One: EFTA Claim*

"The EFTA creates a framework of rights, liabilities, and responsibilities of participants in electronic fund transfer systems." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 560 (9th Cir. 2010). "Civil liability for an EFTA violation arises when any person or legal entity fails to comply with the statute with respect to any consumer. The EFTA is a strict liability statute." *Simone v. M & M Fitness LLC*, No. CV-16-01229-PHX-JJT, 2017 U.S. Dist. LEXIS 54480, at *4 (D. Ariz. Apr. 10, 2017) (citation modified). "[T]he Act applies to any electronic fund transfer that authorizes a financial institution to debit or credit a consumer's account." *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1182 (S.D. Cal. 2010) (citation modified).

1    A transaction is unauthorized if the consumer does not consent to it and receives no

2    benefit from the transaction. 15 U.S.C. § 1693a(12). A "financial institution" is "a State or

3    National bank, a State or Federal savings and loan association, a mutual savings bank, a

4    State or Federal credit union, or any other person who, directly or indirectly, holds an

5    account belonging to a consumer." § 1693a(9). Regulation E of the EFTA adds that a

6    financial institution includes a "bank, savings association, credit union, or any other person

7    . . . that issues an access device and agrees with a consumer to provide electronic fund

8    transfer services[.]" 12 C.F.R. § 1005.2(i). An access device is "a card, code, or other

9    means of access to a consumer's account, or any combination thereof, that may be used by

10   the consumer to initiate electronic fund transfers," § 1005.2(a)(1), which includes things

11   like "debit cards, personal identification numbers (PINs), telephone transfer and telephone

12   bill payment codes . . . " § 1005, Supp. I ¶ 2(a)(1).

13       Plaintiff alleges that Defendant Block violated the EFTA. (Compl. at 6.) First,

14   Defendant Block argues that Plaintiff's EFTA claim fails because she does not identify

15   which section of the statute was violated. (Doc. 28 at 6–7.) It is true that the EFTA provides

16   many sections that set forth definitions, prohibitions, and allocation of liability. *See* 15

17   U.S.C. § 1693a–r. Ninth Circuit courts have dismissed EFTA claims for the very reason

18   advanced by Defendant Block. *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1095

19   (N.D. Cal. 2006); *Barvie v. Bank of Am., N.A.*, No. 18-CV-449-JLS (BGS), 2018 U.S. Dist.

20   LEXIS 162155, at *4–7 (S.D. Cal. Sep. 21, 2018).

21       However, Defendant Block's argument is undercut by its later presumption that

22   § 1693f of the EFTA applies to Plaintiff's claim. (*See* Doc. 28 at 8.) Defendant Block

23   makes this presumption in light of Plaintiff's allegation that Defendant Block was required

24   to investigate the unauthorized transfer. (Doc. 28 at 8; *see* Compl. at 10.) As Defendant

25   Block notes, an obligation to investigate is governed by § 1693f, which "outlines a

26   procedure that a financial institution must follow after it receives notification from a

27   consumer that there was an error." (Doc. 28 at 8.) While Plaintiff's Complaint is no model

28   of clarity, Defendant Block discerned the applicable section of the EFTA under which

Plaintiff brings her claim. The purpose of pleading is to provide a defendant fair notice of the claims asserted against it, which is precisely what Plaintiff's Complaint does here. *See* Fed. R. Civ. P. 8(a)(2).

Second, Defendant Block argues that Plaintiff's claim fails because she does not clearly allege, *inter alia*, "that Block is a financial institution" (Doc. 28 at 7) to invoke § 1693f liability. Plaintiff does not respond to this argument and her Complaint is bereft of any allegations suggesting that Defendant Block is a financial institution as defined by the EFTA and Regulation E. It is Plaintiff's responsibility alone to state "a short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff fails to state the essential elements of § 1693f; specifically, that Defendant Block is a financial institution that is subject to EFTA scrutiny, and dismissal of the EFTA claim is warranted. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982) ("[A] liberal interpretation of a [*pro se*] complaint may not supply essential elements of the claim that were not initially pled.").

"[I]n dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). In determining whether leave to amend should be granted, the Court observes that other district courts in this Circuit have "expressed skepticism and declined to find that similar entities that serve as conduits or intermediaries in facilitating payments qualify as 'financial institutions' under EFTA." *Saldate v. Apple Inc*., No. CV-24-02796-PHX-SPL, 2025 U.S. Dist. LEXIS 69465, at *8 (D. Ariz. Apr. 11, 2025) (dismissing an EFTA claim regarding the Apple Pay platform); *see also Tristan v. Bank of Am*., SACV2201183DOCADS, 2023 U.S. Dist. LEXIS 111961, at *33–35 (C.D. Cal. June 28, 2023) (dismissing an EFTA claim regarding the Zelle platform); *Zepeda v. PayPal, Inc*., C 10-1668 SBA, 2017 U.S. Dist. LEXIS 43672, at *33–34 (N.D. Cal. Mar. 24, 2017) ("But those [EFTA] obligations only apply to a 'financial institution,' which PayPal arguably is not."). While the Court shares the

skepticism of its sister courts, the precise question of whether Defendant Block, by virtue of its Cash App service, is a "financial institution" under the EFTA has not yet been decided and is not presently before the Court. Accordingly, the Court grants Plaintiff leave to amend her EFTA claim.

### 3.   *Count Two: Breach of Contract Claim*

To state a breach of contract claim in Arizona, "a plaintiff must allege that (1) a contract existed, (2) it was breached, and (3) the breach resulted in damages." *Steinberger v. McVey*, 318 P.3d 419, 434 (Ariz. Ct. App. 2014). Plaintiff asserts that Defendants each "entered into contracts with Plaintiff through their services" and "failed to perform obligations, causing damages." (Compl. at 6.) Defendants argue that Plaintiff fails to allege basic facts supporting her claim, such as when the contracts were entered, what obligations or duties they had under the contracts, which of those obligations they breached, how breach occurred, and what specific damage arose because of the breach. (Doc. 28 at 8; Doc. 35 at 4.)

In response, Plaintiff fails to identify any contract between her and Defendant McDonald's at all. Plaintiff does, however, argue that Defendant Block breached "the User Agreement, dispute-investigation duties, EFTA obligations, and duties of good faith and fair dealing," (Doc. 32 at 11), but such allegations do not appear in the Complaint. The Court cannot consider allegations raised only in responsive briefing when evaluating the sufficiency of pleadings. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). Even if it could, such allegations would be insufficient to state a claim for breach of contract. First, Plaintiff offers no authority, and this Court is aware of none, that suggest the EFTA creates a binding contract between Defendant Block and Plaintiff. Second, Plaintiff's reference to a "User Agreement," "dispute-investigation duties," and "duties of good faith and fair dealing," is impermissibly vague and fails to identify, *inter alia*, the contract terms that Defendant Block purportedly

breached. *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Dismissal of this claim against both Defendants is warranted, and the Court will grant leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

### 4.    *Count Three: Fraud/Misrepresentation*

"Arizona does not recognize fraudulent misrepresentation as a distinct tort"; rather, it recognizes the common law tort of fraud. *Beaulieu v. Nat'l Mobility Elder Care Inc.*, No. CV-23-00428-PHX-GMS, 2025 LX 434714, at *5 (D. Ariz. Mar. 26, 2025) (citation modified). The elements of a fraud claim include: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; (9) his consequent and proximate injury." *Echols v. Beauty Built Homes*, 647 P.2d 629, 631 (Ariz. 1982). Federal Rule of Procedure Rule 9(b) "requires claims for fraud to be pled with sufficient specificity to allow a defendant an opportunity to defend against the claim, rather than simply deny they have done anything wrong." *Williamson v. Allstate Ins. Co.*, 204 F.R.D. 641, 644 (D. Ariz. 2001). "[I]n order for a complaint to allege fraud with the requisite particularity, a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (citation modified).

Plaintiff brings a fraud claim against both Defendants, asserting that they each "knowingly misrepresented their responsibilities and the status of Plaintiff's transaction," and she replied upon these misrepresentations to her detriment. (Compl. at 6.) Defendants each argue that her allegations lack particularity to satisfy the heightened pleading standard of Rule 9(b) and amount to legal conclusions. (Doc. 28 at 9–10; Doc. 35 at 5.) Plaintiff responds that she "identifies who, what, when, where, and how the fraud occurred," but presents no other details, explanation, or argument. (Doc. 32 at 11.)

As to Defendant Block, Plaintiff alleges that it (1) "misrepresented its obligations, claiming responsibility lay solely with Plaintiff's [sic]" (Compl. at 10); (2) "made knowingly false statements about Plaintiff to the Better Business Bureau and/or consumer inspectors" (*id.*); and (3) "continued to deny the charge was unauthorized" (*id.* at 12). It is unclear from the first and third allegations to whom Defendant Block made these representations, whether Defendant Block knew the representations were false and material, or whether Defendant Block had the requisite intent that it be relied upon by the hearer of those statements. As for the second allegation, Plaintiff does not set forth what exactly the false statements were, whether the consumer inspectors were ignorant of the falsity of those statements, or their reliance thereon.

As to Defendant McDonald's, Plaintiff alleges that it was completely silent (Compl. at 10). The Court observes the general rule that mere silence is not fraud. *Lane v. Mathews*, 242 P.2d 557, 559 (Ariz. 1952). However, an exception to the rule "exists where the circumstances impose on a person a duty to speak and he deliberately remains silent." *Id.* Plaintiff alleges no duty incumbent upon Defendant McDonald's to speak, the context in which the silence was given, to whom the silence was directed, or the hearer's reliance on that silence.

Plaintiff's fraud claim fails to allege the essential elements of a fraud claim and lacks the particularity required under the heightened Rule 9(b) pleading standard. Accordingly, the Court will dismiss it as to both Defendants with leave to amend. *Lopez*, 203 F.3d at 1130.

### 5.    *Count Four: Arizona Consumer Fraud Act*

As a consumer protection statute, the ACFA is "a broad act intended to eliminate unlawful practices in merchant-consumer transactions." *Holeman v. Neils*, 803 F. Supp. 237, 242 (D. Ariz. 1992) (citation modified). The ACFA prohibits any "deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement

of any merchandise . . ." A.R.S. § 44-1522. Rule 9(b) heightened pleading requirement applies to ACFA claims. *See Williamson*, 204 F.R.D. at 644.

Plaintiff asserts and ACFA claim against both Defendants, alleging that they "engaged in deceptive and unfair practices handling Plaintiff's funds and misrepresenting their obligations." (Compl. at 6.) Defendant Block argues that A.R.S. § 44-1533 precludes Plaintiff's ACFA claim because it permits private actions only against those who have received money or property through an ACFA violation, and Defendant Block has received nothing. (Doc. 28 at 10.) Defendant Block misreads § 44-1533. That section does not impose any limits upon the enforcement of ACFA; in fact, it clarifies that ACFA is not the exclusive law from which an aggrieved consumer may recover for the conduct proscribed by ACFA. A.R.S. § 44-1533(B); *see Shaw v. CTVT Motors, Inc.*, 300 P.3d 907, 910 (Ariz. Ct. App. 2013) (finding that ACFA claims "can be brought in addition to seeking other remedies"). Defendant Block provides no other argument to dismiss Plaintiff's ACFA claim as to it, so the claim survives.

Next, Defendant McDonald's argues that Plaintiff's ACFA claim fails because she "merely provides a conclusory allegation that McDonald's . . . engaged in some illusory, deceptive, and unfair practices and misrepresented unknown obligations." (Doc. 35 at 5.) Plaintiff responds that her "claim is supported by McDonald's failure to investigate, concealment, and misleading communications." (Doc. 38 at 5.) Plaintiff's Complaint, however, contradicts her argument. Plaintiff alleges that a representative of McDonald's recognized that the transaction was an error and offered to provide her with a refund in-store. (Compl. at 12.) When Plaintiff advised the representative that she could not make it back to the store, the representative advised her to go to her bank to dispute it. (*Id.* at 12, 18.) The representative declined to provide Plaintiff with a letterhead or email, but otherwise authorized Plaintiff to share his name and contact information with her bank. (*Id.* at 12.) According to Plaintiff, Defendant McDonald's failed to address the matter further and "remain[ed] silent." (*Id.* at 10.)

. . .

These facts, assuming their truth, suggest that Defendant McDonald's did conduct some kind of investigation, shared their findings with Plaintiff, offered to rectify the error, and provided her with an alternative course of action when Plaintiff could not return to the store to receive a refund. The fact that Defendant McDonald's was silent thereafter without any additional context does not explain how they "concealed" information, "misled" Plaintiff, or "misrepresented" their obligations in connection with the transaction. The Court cannot infer any misconduct prohibited by ACFA from these facts. *Ashcroft*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Accordingly, the Court will dismiss Plaintiff's ACFA claim as to Defendant McDonald's only and will grant Plaintiff leave to amend. *Lopez*, 203 F.3d at 1130.

### 6.    *Count Five: Defamation*

Arizona courts follow the Restatement (Second) of Torts ("Restatement") for defamation. *Rowland v. Union Hills Country Club*, 757 P.2d 105, 110 (Ariz. Ct. App. 1988). "Defamation is composed of libel and slander. Oversimplifying, libel is a written or visual defamation, while slander is an oral defamation." *Boswell v. Phx. Newspapers*, 730 P.2d 178, 183 n.4 (Ariz. Ct. App. 1985). The elements of defamation are as follows:

> To create liability for defamation there must be:
> (a) a false and defamatory statement concerning another;
> (b) an unprivileged publication to a third party;
> (c) fault amounting at least to negligence on the part of the publisher; and
> (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Restatement § 558. On what constitutes the requisite fault under subpart (c):

> One who publishes a false and defamatory communication concerning a private person . . . is subject to liability, if, but only if, he

(a) knows that the statement is false and that it defames the other,
(b) acts in reckless disregard of these matters, or
(c) acts negligently in failing to ascertain them."

Restatement § 580B; *see also* Comment (e) to Restatement § 558.

"A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement § 559. "To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Turner v. Devlin*, 848 P.2d 286, 288–89 (Ariz. 1993). Restatement §§ 569–70; *Yetman v. English*, 811 P.2d 323, 333 n.7 (Ariz. 1991); *Wright v. Mailatyar*, 2023 Ariz. Super. LEXIS 273, at *2 (Ariz. Sup. Ct. Jul. 18, 2023) ("[D]amages are presumed for defamation *per se*."); *Hobbs v. Oppenheimer*, No. CV-22-00290-TUC-JCH, 2022 U.S. Dist. LEXIS 205138, at *9 (D. Ariz. Nov. 9, 2022).

"As a matter of law, a statement is not actionable if it cannot reasonably be interpreted as stating or implying facts susceptible of being proved true or false. . . the key inquiry is whether the challenged expression, however labeled by the defendant, would reasonably appear to state or imply assertions of objective fact." *BLK III, LLC v. Skelton*, 506 P.3d 812, 817 (Ariz. Ct. App. 2022) (citation modified). "In determining whether a statement is defamatory, the court must consider the impression created by the words used as well as the general tenor of the expression, from the point of view of a reasonable person at the time the statement was uttered and under the circumstances it was made." *Id*. (citation modified).

To be actionable *per se*, the slander must concern "statements which charge one with a contagious or venereal disease; charge that a woman is not chaste; accusations which tend to injure a person in his or her profession, trade or business; or statements that impute the commission of a crime involving moral turpitude," and the libel must concern statements that "on their face falsely tend to impeach one's honesty, integrity, or

reputation." *Boswell*, 730 P.2d at 183 n.4 Whether defamation is *per se* actionable bears upon the element of damages; the other elements of defamation remain the same.

Defendants argue that Plaintiff fails to plead essential elements of a defamation claim, including the content of the statement and to whom it was published. (Doc. 28 at 11; Doc. 35 at 6.) Plaintiff alleges that Defendant Block "made knowingly false statements about Plaintiff to the Better Business Bureau and/or consumer inspectors." (Compl. at 6.) However, she does not set forth in a short and plain statement what, exactly, the false statements were. Fed. R. Civ. P. 8(a). And while Plaintiff narrates that Defendant Block "continued to deny the charge was unauthorized" (Compl. at 12), it is unclear whether the statement was made to Plaintiff or to third parties. It is not the job of the Court to extrapolate unpled facts to piece together the elements of a claim. *See* Fed. R. Civ. P. 8(a) (requiring that a plaintiff plead a short and plain statement).

As for Defendant McDonald's, Plaintiff alleges that it was completely silent. (Compl. at 10.) However, Plaintiff does not clearly explain the context in which the silence was given or to whom. As currently alleged, silence is not an actionable statement under Arizona law because the Court cannot infer from the allegations whether Defendant McDonald's silence "would reasonably appear to state or imply assertions of objective fact." *BLK III, LLC*, 506 P.3d at 817. Accordingly, the Court dismisses Plaintiff's defamation claim as to both Defendants with leave to amend. *Lopez*, 203 F.3d at 1130.

### 7.    *Count Six: Negligence/Gross Negligence*

"To establish a claim for negligence, the [plaintiff] must show that [the defendant] owed a duty, that they breached this duty, and that the [plaintiff] suffered an injury as a proximate result of the breach." *Wells Fargo Credit Corp. v. Smith*, 803 P.2d 900, 905 (Ariz. Ct. App. 1990).

First, Defendants argue that Plaintiff's negligence claim is barred by the economic loss doctrine. (Doc. 28 at 13–14; Doc. 35 at 6.) "Arizona's economic loss doctrine limits contracting parties to their agreed upon remedies for purely economic losses." *Sullivan v. Pulte Home Corp.*, 306 P.3d 1, 2 (Ariz. 2013). But, as Defendants themselves point out

elsewhere, Plaintiff fails to identify any contract at all between her and Defendant McDonald's. And while Plaintiff broadly alleges that a "User Agreement" exists between Defendant Block and Plaintiff, it is unclear whether that agreement sets forth remedies for economic loss such that the doctrine is invoked. At this early stage of the proceedings, the Court cannot find that Plaintiff's negligence claim is barred by the economic loss doctrine.

Next, Defendants argue that Plaintiff's negligence claim fails because Defendants owe no duty to Plaintiffs. (Doc. 28 at 14–15; Doc. 35 at 6.) Arizona has expressly declined to create "a presumed duty of care owed by all people at all times." *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 840 (Ariz. 2018). In Arizona, a duty must exist "by means of special relationships and relationships created by public policy, to define the rights and obligations of the parties before a defendant, by his acts or omissions, places a plaintiff at risk of physical injury." *Id.* "Duties based on special relationships may arise from several sources, including special relationships recognized by the common law, contracts, or conduct undertaken by the defendant." *Id.* at 829. The Restatement defines several "special relationships" imposing an affirmative duty upon, *inter alia*, common carriers, innkeepers, and parents of minor children. Restatement §§ 314–20. Public policy may also create a duty, and in Arizona, the "primary source for identifying a duty based on public policy is the state statutes." *Quiroz*, 416 P.3d at 830. "Whether a duty exists is a legal matter to be determined before the case-specific facts are considered." *Id.* at 827–28. Ultimately, "Arizona does not presume duty; rather, in every negligence case, the plaintiff bears the burden of proving the existence of a duty." *Id.* at 838.

Plaintiff fails to plausibly allege that either Defendant owed a duty to her under contract, statute, special relationship, public policy, or common law. She merely asserts in an unparticularized manner that Defendants owed "a duty of reasonable care in handling financial transactions and consumer complaints." (Compl. at 7.) Plaintiff's broad allegations of duty and breach are tantamount to legal conclusions that are not entitled to the assumption of truth and insufficient to plead a claim. *Iqbal*, 556 U.S. at 679–80.

Accordingly, the Court dismisses Count Six as to both Defendants with leave to amend. *Lopez*, 203 F.3d at 1130.

### 8.   *Count Seven: Unjust Enrichment*

Next, Plaintiff asserts that Defendant McDonald's was unjustly enriched by retaining the unauthorized funds. (Compl. at 7.) Defendant McDonald's only argument is that "Plaintiff's 'Breach of Contract' claim (if viable) would terminate Plaintiff's claim for unjust enrichment because it would serve as a remedy available at law." (Doc. 35 at 7.) As discussed *supra*, Plaintiff's breach of contract claim is dismissed for failure to state the existence and breach of a contract between her and Defendant McDonald's. Accordingly, Defendant McDonald's argument fails and the Court declines to dismiss Plaintiff's claim for unjust enrichment on that basis.

### 9.   *Count Eight: Willful Conduct*

"Criminal statutes, unlike civil statutes, are not typically thought of as providing a remedy to private citizens," *Chen v. Cozzoli LLC*, No. CV-21-01025-PHX-DWL, 2022 U.S. Dist. LEXIS 182567, at *19–20 (D. Ariz. Oct. 5, 2022), unless the criminal statute provides for a private cause of action, *Bailey v. Ariz. Bd. of Regents*, No. CV-23-00557-TUC-AMM (LCK), 2024 LX 26183, at *22 (D. Ariz. Sep. 30, 2024). Otherwise, "[n]o private citizen, however personally aggrieved, may institute criminal proceedings independently, and the prosecutor's own discretion is not subject to judicial control at the behest of persons other than the accused." *State v. Lamberton*, 899 P.2d 939, 941–42 (Ariz. 1995) (citation modified).

Plaintiff asserts that both Defendants violated A.R.S. § 13-2311, an Arizona criminal statute that prohibits fraudulent schemes and practices related to the business conducted by a state agency. (Compl. at 7.) Defendants argue that the claim must be dismissed because Plaintiff cannot enforce criminal statutes as a private person, and even if she could, the statute is inapplicable to Defendants because they are not state agencies. (Doc. 28 at 16; Doc. 35 at 7.) Plaintiff presents no argument in response. (*See* Docs. 32, 38.) The Court deems Plaintiff's non-responsiveness as consent to dismissal of this claim.

*Garcia v. GMAC Mortgage, LLC*, 2009 U.S. Dist. LEXIS 77909, at * 1 (D. Ariz. Aug. 31, 2009) ("If an argument is not properly argued and explained, the argument is waived."); *Doe v. Dickenson*, 2008 U.S. Dist. LEXIS 95604, at *5 (D. Ariz. Nov. 13, 2008) ("[T]he Court is entitled to treat Plaintiffs' failure to respond as  waiver of the issue and consent to Defendants' argument.") (citation modified). Permitting Plaintiff to amend this claim is futile, because Plaintiff is a private person, the statute provides no private cause of action, and Defendants are not state agencies or engaged in state business. Accordingly, the Court dismisses Plaintiff's claim of willful conduct against both Defendants with prejudice.

10.    *Attorney Fees*

Defendants each request their respective attorney fees and costs pursuant to A.R.S. § 12-341.01, which awards the prevailing party its fees in a contested contract action. (Doc. 28 at 16; Doc. 35 at 7.) The Court denies the request because no party has yet prevailed.

## VII.    CONCLUSION

After wading through yet another morass of filings, the Court determines that it has proper removal jurisdiction of this matter and dismisses Plaintiff's Counts One, Two, Three, Five, Six, and Eight against both Defendants, and Count Four only as to Defendant McDonald's. No later than fourteen days of the date of this Order, Plaintiff may file an amended complaint amending **only** some or all of Counts One through Six if she so chooses. Absent an amendment, the parties should be prepared to address whether remand of the residual state law claims is appropriate under 28 U.S.C. § 1367(c)(3).

The Court makes the general observation that Plaintiff appears to be using artificial intelligence to draft her pleadings and briefs based on her alternating use of second- and third-person pronouns (*e.g.*, "you" and "the plaintiff") in reference to herself and the breakneck speed in which she files briefs and other documents. Whether or not this is the case, the Court reminds Plaintiff that she is bound by Federal Rule of Civil Procedure 11 and, whenever she presents a written paper to the Court, she certifies that its "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

With that principle in mind, the Court warns Plaintiff she may only attempt to amend a count if she possesses a good faith basis in both fact and law to do so. Mere stubbornness or a desire simply to prolong litigation to impose cost on other parties is sanctionable conduct; so is blind reliance on an automated or other external source without that good faith belief, after reflection, that a claim is factually and legally supported.

**IT IS ORDERED** denying Plaintiff's Motion to Remand This Case to Maricopa County Superior Court (Doc. 11), Motion to Stay (Doc. 33), and Motion to Strike Defendant McDonalds [sic] Good Faith Certificate (Doc. 39).

**IT IS FURTHER ORDERED** granting Defendant McDonald's Motion for Extension of Time to File Its Reply in Support of Its Motion to Dismiss (Doc. 53).

**IT IS FURTHER ORDERED** striking Plaintiff's Response Defendants [sic] Joint to Motion to Dismiss (Doc35) [sic] as an improper sur-reply (Doc. 58).

**IT IS FURTHER ORDERED** granting in part and denying in part Defendant Block's Motion to Dismiss and Defendant McDonald's Motion to Dismiss (Doc. 28, 35). The Court dismisses Counts One, Two, Three, Five, Six, and Eight as to both Defendants, and Count Four only as to Defendant McDonald's.

**IT IS FURTHER ORDERED** that, no later than fourteen days of the date of this Order, that Plaintiff may file an amended complaint amending only some or all Counts One through Six if she so chooses.

**IT IS FURTHER ORDERED** denying Defendants' request for attorney fees.

Dated this 4th day of February, 2026.

_____

Honorable John J. Tuchi
United States District Judge