**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Mara Finch,<br>Plaintiff,<br>v.<br>Block Incorporated, *et al.*,<br>Defendants. | No. CV-25-04247-PHX-JJT<br>**ORDER** |

Before the Court is Defendant McDonald's USA, LLC's Motion to Dismiss (Doc. 68) and Defendant Block Incorporated's Motion to Dismiss (Doc. 69). *Pro se* Plaintiff Mara Finch filed a consolidated Response in opposition to both Motions (Doc. 73), and each Defendant filed a Reply (Docs. 74, 75). Plaintiff then filed a Motion for Leave to File a Limited Sur-Reply. (Doc. 76.) The Court finds the Motions suitable for decision without oral argument. LRCiv 7.2(f). For the reasons set forth below, the Court grants in part Defendant Block's Motion to Dismiss, denies Plaintiff's Motion for Leave to File a Limited Sur-Reply, remands this case to state court, and denies Defendant McDonald's Motion to Dismiss as moot.

**I. BACKGROUND**

The Court recites only the relevant facts from the First Amended Complaint (Doc. 62, FAC), the operative pleading, that are necessary to resolve the pending Motions. This case arises from Plaintiff's fast-food purchase at one of Defendant McDonald's locations that was facilitated through Defendant Block's payment platform, Cash App. (FAC ¶¶ 1–

4, 10.) Plaintiff alleges she maintains a Cash App account that holds funds from her linked bank accounts and receives funds through peer-to-peer transfers; the funds can be spent, transferred, or withdrawn. (FAC ¶ 11.) On June 14, 2025, Plaintiff attempted to purchase food at a McDonald's drive-through in Tucson, Arizona, but "[d]ue to confusion regarding the order," left the drive-through before receiving her food. (FAC ¶¶ 16–17.) Although Plaintiff never received the food, $77.01 was debited from her Cash App account. (FAC ¶ 18.) The transaction appeared on Plaintiff's June 2025 periodic statement, and on June 18, 2025, Plaintiff submitted a dispute through Cash App, identifying the transaction and stating that no goods were received in connection with the transaction. (FAC ¶¶ 19–20.) A few days later, a McDonald's manager "acknowledged via text message to the plaintiff that the order had not properly cleared." (FAC ¶ 22; Exhibit C.) Plaintiff alleges she provided a screenshot of the message in the Cash App dispute. (FAC ¶ 21.) Later that same day, Defendant Block denied the dispute, stating that "it had investigated and determined the transaction was authorized." (FAC ¶ 23.)

Plaintiff asserts six claims in her FAC: (1) violation of 15 U.S.C. § 1693, the Electronic Fund Transfer Act ("EFTA"), against Defendant Block; (2) Breach of Contract against both Defendants; (3) Fraud against Defendant Block; (4) violation of A.R.S. § 44-1522, the Arizona Consumer Fraud Act, against Defendant Block; (5) Defamation *Per Se* against Defendant Block; and (6) Negligence against both Defendants.[1] Each Defendant now moves to dismiss all claims asserted against it.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) may rest on either (1) the lack of a cognizable legal theory or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In evaluating a complaint for failure to

[1] This case was originally filed in the Maricopa County Superior Court, and Defendant Block timely removed the action. (Doc. 1.) The Court previously dismissed Plaintiff's original complaint with leave to amend (Doc. 61), and Plaintiff subsequently filed the FAC (Doc. 62).

state a claim, the Court takes the well-pled factual allegations as true and construes them in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore cannot defeat a motion to dismiss. *Iqbal*, 556 U.S. at 679–80. But "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

In ruling on a Rule 12(b)(6) motion, a court may consider only the complaint, its exhibits, and matters that may be judicially noticed; if it considers anything more, the motion must be treated as one for summary judgment. Fed. R. Civ. P. 10(c), 12(d). A court may also consider "evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citations omitted). Judicial notice, in turn, extends only to facts "not subject to reasonable dispute." Fed. R. Evid. 201(b). When a fact is properly noticed, the Court need not accept allegations that contradict it. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

## III. ANALYSIS

### A. Motions to Dismiss

#### 1. *Count 1: EFTA Claim Against Defendant Block*

"The EFTA creates a framework of rights, liabilities, and responsibilities of participants in electronic fund transfer systems." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 560 (9th Cir. 2010) (quotation omitted). "Civil liability for an EFTA violation arises when any person or legal entity fails to comply with the statute with respect to any consumer." *Simone v. M & M Fitness LLC*, 2017 WL 1318012, at *2 (D. Ariz. Apr. 10, 2017) (citation modified). "The EFTA is a strict liability statute." *Id.* "[T]he Act applies to any electronic fund transfer that authorizes a financial institution to debit or credit a consumer's account." *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1182 (S.D. Cal. 2010) (quotation omitted).

Here, plaintiff alleges Defendant Block violated the EFTA on two grounds: (1) by failing to correct the error in Plaintiff's Cash App account (FAC ¶ 61) and (2) by failing to conduct a reasonable investigation into the transfer at issue after being notified by Plaintiff that her Cash App account contained an error (FAC ¶ 58). The Court now reviews each argument in turn.

Under the EFTA's "Error Resolution" section, a consumer may notify a financial institution that the consumer's account contains an error, the amount of the error, and the reasons the consumer believes an error occurred. 15 U.S.C. § 1693f(a). Upon receiving such a notice, the financial institution must investigate the alleged error. *Id.* If the institution determines that an error occurred, it must promptly correct it, § 1693f(b); if it determines that no error occurred, it must explain its findings to the consumer, § 1693f(d).[2] For purposes of § 1693f, subsection (f) defines an "error" as any of the following:

> (1) an unauthorized electronic fund transfer; (2) an incorrect electronic fund transfer from or to the consumer's account; (3) the omission from a periodic statement of an

---

[2] The provisions of § 1693f discussed here also contain timing requirements. Those requirements are not in dispute.

> electronic fund transfer affecting the consumer's account which should have been included; (4) a computational error by the financial institution; (5) the consumer's receipt of an incorrect amount of money from an electronic terminal; (6) a consumer's request for additional information or clarification concerning an electronic fund transfer or any documentation required by this subchapter; or (7) any other error described in regulations of the [Consumer Financial Protection Bureau].

§ 1693f(f).

As a preliminary matter, the parties do not dispute that Plaintiff is a consumer and that Defendant Block is a financial institution under the EFTA, *see* § 1693a(6), (9), or that the transfer at issue is covered by the EFTA, *see* § 1693a(7). With respect to Plaintiff's failure to correct an error theory, Plaintiff alleges that Defendant Block violated § 1693f because Plaintiff properly notified Defendant Block of the debit from her Cash App account (FAC ¶¶ 49, 52), the debit constituted a qualifying error (FAC ¶ 57), and that Defendant Block failed to correct the error (FAC ¶ 61). Defendant Block argues that this theory fails because the alleged error does not fall within any of the errors enumerated in § 1693f(f), so no duty to correct the debit ever arose. (Doc. 69 at 4.) The Court agrees with Defendant Block.

Since the FAC does not clarify which § 1693f(f) error the disputed debit represents, the Court considers the only two errors under which the disputed debit could conceivably fall: (1) an unauthorized electronic fund transfer or (2) an incorrect electronic fund transfer from or to the consumer's account.[3]

As for an "unauthorized electronic fund transfer," the EFTA and its implementing regulation define the term as "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit." § 1693a(12); *see also* 12 C.F.R.

[3] Subparagraphs (3)–(6) of § 1693f(f) describe errors inapplicable to the disputed debit, and subparagraph (7) is inapplicable because the Consumer Financial Protection Bureau has not promulgated any regulation defining a debit in relation to a transaction where goods were not delivered as an error under the EFTA.

§ 1005.2(m). The FAC alleges that Plaintiff received no benefit from the transaction, as she left the McDonald's drive-through before receiving any food (FAC ¶ 17), but Plaintiff's own allegations establish that she initiated the transfer herself (FAC ¶ 16). That admission forecloses any claim that the debit was unauthorized. *Saldate v. Apple Inc.*, 2025 WL 1094307, at *4 (D. Ariz. Apr. 11, 2025) (foreclosing an unauthorized electronic fund transfer claim because plaintiff alleged that he "attempted to initiate" the disputed transfer).

As for an "incorrect electronic fund transfer," neither the EFTA nor the Consumer Financial Protection Bureau's regulations define the term. Courts, however, have construed "incorrect" to refer to the amount or the recipient of the transfer. *See, e.g., id.*; *Sanchez v. Navy Fed. Credit Union*, 2023 WL 6370235, at *23 (C.D. Cal. Aug. 14, 2023); *Tristan v. Bank of Am.*, 2023 WL 4417271, at *10 (C.D. Cal. June 28, 2023). That reading fits the statute's focus on the mechanics of the transfer itself: a transfer is "incorrect" when it moves the wrong amount or sends funds to the wrong place, not when it is carried out exactly as the consumer directed, but the underlying purchase goes awry. Nothing in the FAC alleges that McDonald's was not the intended recipient or that the $77.01 debit did not match the amount of the transaction. To the contrary, Plaintiff alleges that she intended to pay McDonald's for her food order, which is precisely the transfer that occurred. (FAC ¶ 16.) Her grievance is that she did not receive the food—a dispute about the underlying purchase—not that an error occurred in the electronic fund transfer. Accordingly, the transfer in question is not an incorrect electronic fund transfer, and Plaintiff's claim that Defendant Block failed to correct an error cannot survive.

Plaintiff's second theory of liability alleges that Defendant Block violated the EFTA by failing to conduct a reasonable investigation into the transaction as required by § 1693f. (FAC ¶ 58.) A financial institution's duty to investigate is triggered only when a consumer provides a notice of error that satisfies the requirements of § 1693f(a). That is, when it receives oral or written notice from a consumer that:

> (1) sets forth or otherwise enables the financial institution to identify the name and account number of the consumer; (2) indicates the consumer's belief that the . . . consumer's

> account[] contains an error and the amount of such error; and (3) sets forth the reasons for the consumer's belief . . . that an error has occurred.

§ 1693f(a).[4] Defendant Block argues that Plaintiff's notice did not trigger the duty to investigate because the notice gave did not identify any error enumerated in § 1693f(f). The Court agrees with Defendant Block.

As discussed above, Section 1693f(f) defines what counts as an error. Reading § 1693f(a) against this backdrop, the Court concludes that a consumer's notice triggers a financial institution's duty to investigate only if the "error" it identifies falls within one of the categories listed in § 1693f(f). A general belief that his or her account reflects an incorrect dollar amount is not enough. A contrary reading would require financial institutions to investigate any dispute a consumer might raise about an underlying purchase, untethered from the categories of error specified by Congress. Other courts within the Ninth Circuit have reached the same conclusion. *See e.g.*, *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 907 ("To trigger a financial institution's obligations under the EFTA, consumers must identify a qualifying error—general allegations of fraud aren't sufficient."); *Sundahl v. Comerica Bank*, 2026 WL 112059, at *4 (S.D. Cal. Jan. 15, 2026); *Sanchez*, 2023 WL 6370235, at *24 ("Since Plaintiff fails to identify any actual error . . . she also cannot maintain a cause of action based on Defendant's failure to conduct a reasonable investigation into her claim.").

Here, the FAC does not allege that Plaintiff's notice identified any qualifying error enumerated in § 1693f(f). The FAC alleges that Plaintiff's notice stated that she received no goods from the McDonald's transaction and included a screenshot in which McDonald's management acknowledged as much.[5] (FAC ¶¶ 20–21.) As explained above, the non-

---

[4] *See supra*, note 2. The timing requirements remain undisputed.

[5] Defendant Block argues in its Motion that the notice did not include a screenshot from McDonald's management. (Doc. 69 at 6, n.2.) The dates alleged in the FAC—when the notice was submitted and when the screenshot was obtained—cast doubt on whether the notice could have included the screenshot, but the Court need not resolve that dispute. Regardless of whether the notice contained the screenshot, the Court's analysis of whether it identified a qualifying error remains the same.

receipt of goods purchased with an electronic fund transfer does not constitute an error under § 1693f(f). The FAC therefore fails to allege that Plaintiff satisfied § 1693f(a)(3)'s requirement that she set forth the reasons for her belief that her Cash App account contained an error. Accordingly, the defective notice did not trigger Defendant Block's duty to investigate, and Plaintiff's claim that Defendant Block violated the EFTA by failing to reasonably investigate the disputed debit cannot survive.

Finally, the Court will not grant Plaintiff further leave to amend her EFTA claim. Typically, "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). Here, the defect identified is not a lack of factual detail that further pleading could supply. Plaintiff's own allegations establish that she authorized a $77.01 transfer to McDonald's and that her dispute concerns her non-receipt of the food she ordered. No additional facts consistent with those allegations could convert that dispute into a qualifying error under § 1693f(f). Amendment would therefore be futile, and the EFTA claim is dismissed with prejudice.

2. *Counts 2–6: State Law Claims*

Plaintiff's remaining claims arise under state law: breach of contract, fraud, violation of the Arizona Consumer Fraud Act, defamation, and negligence. The Court need not reach the merits of these claims. Having dismissed the only claim over which it had federal question jurisdiction, 28 U.S.C. § 1331, and there being no possibility of diversity jurisdiction since this dispute centers around a $77.01 transfer, far from the amount in controversy minimum of $75,000 needed for diversity jurisdiction, 28 U.S.C. § 1332(b), the Court declines to exercise supplemental jurisdiction over the related state law claims, 28 U.S.C. § 1367(c)(3). Whether to do so is squarely within the Court's discretion. *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) (citing *Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007)). Here, the relevant factors—judicial economy, convenience, fairness, and comity—all weigh in favor of declining supplemental

jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Further, it is "generally preferable" for a district court to decline supplemental jurisdiction when the federal claim is dismissed before trial. *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991). That is particularly true where, as here, the federal claim is dismissed at the outset of the litigation. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and will remand this case to state court. Defendants' Motions to Dismiss are therefore moot as they pertain to Plaintiff's state law claims.

**B. Motion for Leave to File a Limited Sur-Reply**

When considering whether to grant leave to file a sur-reply, relevant factors include whether the movant's reply raises arguments or issues for the first time, whether the sur-reply would help resolve the pending motion, and whether the movant would be unduly prejudiced were leave granted. *See Sebert v. Ariz. Dep't of Corrs.*, 2016 WL 3456909, at *1 (D. Ariz. June 17, 2016). Plaintiff argues that leave is warranted because Defendants' Replies raise new arguments or materially expand on arguments not raised in their opening briefs. (Doc. 76 at 2.) Because the Court has declined to exercise supplemental jurisdiction over Plaintiff's state law claims, the Court considers Plaintiff's Motion only insofar as it relates to the EFTA claim.

Although Plaintiff's Motion is not entirely clear, the Court understands her argument that Defendants' Replies raise arguments about "the timing and availability of key evidence, including issues not previously developed in Defendants' opening briefs" to refer to the dispute over whether Plaintiff's notice of error included the screenshot of the McDonald's manager's message acknowledging that Plaintiff had not received her order. (Doc. 76 at 2.) Because this argument relates to the EFTA claim, the Court considers the argument but concludes that a sur-reply is not warranted.

First, Defendant Block did not raise for the first time in its Reply the argument that, based on the dates alleged in the FAC, the screenshot could not have been included in Plaintiff's notice of error. Footnote 2 of Defendant Block's Motion to Dismiss expressly

states that "[p]laintiff did not provide [Defendant Block] with any such screenshot. Plaintiff alleges the screenshot was created two days after she submitted the dispute." (Doc. 69 at 6.) Nor did Defendant Block materially expand on that argument in Reply: "[Plaintiff] could not have provided [Defendant Block] with any screenshot or 'acknowledgement' from McDonald's because she did not receive any such information until after she submitted her dispute to [Defendant Block]." (*See* Doc. 74 at 3.) This factor therefore weighs against granting Plaintiff's Motion.

Second, further briefing on whether the screenshot was part of the notice of error would not help the Court decide whether to dismiss the EFTA claim. As explained above, whether the notice included the screenshot is immaterial to the Court's analysis. The disputed debit described in the FAC does not constitute any qualifying error under § 1693f(f). That conclusion is dispositive, and a screenshot confirming that Plaintiff did not receive her food would only reinforce the very facts that fail to describe a qualifying error. Additional argument on this point would neither help Plaintiff's position nor assist the Court in ruling on Defendant Block's Motion to Dismiss. This factor also weighs against granting Plaintiff's Motion.

Finally, the Court views the prejudice factor as neutral. Defendant Block is entitled to expect that briefing will proceed under the ordinary rules, which give the movant the last word, and permitting a sur-reply would depart from that practice. But because no new argument about the screenshot could change the Court's analysis of Plaintiff's EFTA claim, any prejudice to Defendant Block would be minimal. This factor therefore carries little weight.

Weighing these factors, the Court concludes that leave to file a sur-reply is not warranted. Plaintiff's remaining arguments for leave, which relate to her state law claims, are moot because the Court declines to exercise supplemental jurisdiction over those claims.

. . .

. . .

## IV. CONCLUSION

Taking the FAC's allegations as true and construing them in Plaintiff's favor, Plaintiff has not stated a plausible claim for relief against Defendant Block under the EFTA (Count 1), and amendment would be futile. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims (Counts 2–6).

**IT IS THEREFORE ORDERED** granting in part Defendant Block's Motion to Dismiss (Doc. 69). Plaintiff's claim under the Electronic Fund Transfer Act is dismissed with prejudice.

**IT IS FURTHER ORDERED** denying Defendant McDonald's USA, LLC's Motion to Dismiss (Doc. 68) as moot.

**IT IS FURTHER ORDERED** denying Plaintiff's Motion for Leave to File a Limited Sur-Reply (Doc. 76).

**IT IS FURTHER ORDERED** directing the Clerk of Court to remand this case to the Maricopa County Superior Court and close this matter.

Dated this 30th day of October, 2026.

Honorable John J. Tuchi
United States District Judge